UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| CHERLYN K. GARDENER, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 3:16-CV-118 JD |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Cherlyn K. Gardener is appealing the denial of her claim for supplemental security income benefits. She argues that she has been unable to work since 2010, and that the Commissioner of Social Security's decision to the contrary is not supported by substantial evidence. For the following reasons, the Court finds that reversal is required. The administrative law judge relied on testimony from a vocational expert to find that other jobs existed that Ms. Gardener could perform despite her limitations, but the administrative law judge's questions to the vocational expert did not accurately reflect all of the limitations he ultimately found Ms. Gardener to have. The ALJ also failed to address apparent contradictions between Ms. Gardener's limitations and some of the jobs the vocational expert identified. The Court therefore remands for further proceedings.

## I. FACTUAL BACKGROUND

Cherlyn Gardener filed a claim for supplemental security insurance benefits in August 2010, contending that she was unable to work primarily due to fibromyalgia and chronic obstructive pulmonary disease. At the administrative hearing, she testified to limitations that were quite severe, including that she was unable to lift even a pound, could not walk more than

100 feet, and could not sit or stand more than ten minutes. The ALJ found that these extreme limitations were not supported by the medical records or by the opinions of the doctors, so he found that Ms. Gardener was capable of performing medium work with the following limitations: "only occasional climbing, balancing, stooping, kneeling, crouching, crawling; no concentrated exposure to temperature extremes, humidity, fumes, dusts, odors, gases, and other pulmonary irritants; no work at unprotected heights; and she cannot operate hazardous moving machinery." (R. 18).

After a previous hearing on Ms. Gardener's claim, the ALJ had found that Ms. Gardener was still capable of performing her past work, but the Appeals Council remanded that decision for further consideration. On remand, the ALJ adopted the same residual functional capacity assessment, but proceeded to step five to determine whether Ms. Gardener could perform other jobs. Based on a hypothetical provided by the ALJ, the vocational expert identified three jobs that a person with the stated limitations could perform: dining room attendant, conveyor tender, and prep cook. The ALJ accepted that testimony, and thus found that Ms. Gardener was not disabled and denied her claim for benefits. The Appeals Council denied Ms. Gardener's request for review, so Ms. Gardener filed this suit seeking review of that decision.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance."

*Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential

3

evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, in between steps three and four, the ALJ must then assess the claimant's Residual Functional Capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the RFC to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Gardener makes four arguments in support of reversal. First, she argues that the ALJ failed to acknowledge and account for a functional limitation given by an agency physician. Second, she argues that the ALJ did not adequately address her complaints of chronic fatigue.

4

Third, and relatedly, she argues that the ALJ did not properly account for the drowsiness she experiences as a side effect of her medication. Fourth, she argues that the ALJ erred in relying on the vocational expert's testimony about which jobs she could perform, and argues that the ALJ should have addressed apparent contradictions between her limitations and the requirements of those jobs.

The Court begins with the fourth argument, as it is dispositive. Before discussing the argument Ms. Gardener raises directly, though, there is a related problem with the ALJ's reliance on the vocational expert's testimony, in that the ALJ failed to provide the vocational expert with a hypothetical that accurately encompassed all of the limitations in her RFC. To determine what jobs would be available to a person with Ms. Gardener's limitations, the ALJ described a hypothetical person with a set of limitations, and then asked the vocational expert if jobs existed that such a person could perform. In pertinent part, the ALJ directed the vocational expert to assume that the hypothetical person "is limited to occupations which do not require lifting more than 50 pounds; do not require more than occasional climbing; [or] *frequent* balancing, stooping, kneeling, crouching or crawling . . . ." (R. 45–46 (emphasis added)). Those limitations were consistent with an RFC assessment performed by an agency physician. However, the ALJ did not actually adopt those same limitations as part of Ms. Gardener's RFC—after discussing the agency physician's opinion, the ALJ's decision "added *occasional* [as opposed to frequent] postural maneuvers due to pain complaints . . . ." (R. 21 (emphasis added)). Thus, the ALJ concluded that Ms. Gardener's RFC included the ability to perform "only occasional . . . balancing, stooping, kneeling, crouching, [or] crawling." (R. 18). As just noted, however, the hypothetical the ALJ posed to the vocational expert was that the person could perform those

activities frequently, meaning the ALJ did not accurately convey Ms. Gardener's limitations to the vocational expert.

This is a critical error. At step five, the Commissioner has the burden of proof of establishing "that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008) (quoting 20 C.F.R. § 404.1560(c)(2)). Having posed a hypothetical to the vocational expert that did not account for all of Ms. Gardener's limitations, the ALJ did not carry his burden of showing that a person with all of Ms. Gardener's limitations could perform the jobs in question. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("Ordinarily, a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record."). Courts sometimes find incomplete hypotheticals to be harmless where there is evidence that the vocational expert was aware of and would have independently accounted for any limitations absent from the hypothetical, but that is not the case here. *Yurt v. Colvin*, 758 F.3d 850, 857–58 (7th Cir. 2014); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). There is no evidence that the vocational expert reviewed the medical records,[1] nor are these particular limitations so apparent from the records that the vocational expert could be presumed to account for them. The vocational expert did not base her testimony on the limitations Ms. Gardener testified to at the hearing, either— after posing the first hypothetical, the ALJ asked if a person with the limitations Ms. Gardener had testified to could perform any work, and the vocational expert said no.

Although, as the Commissioner notes, Ms. Gardener did not expressly argue in her opening brief that the ALJ's hypothetical was inaccurate, she did contest the ALJ's reliance on

---

[1] The ALJ stated at the hearing that the vocational expert had "reviewed the records in the file relevant to Ms. Gardener's past employment," (R. 45), but there is no indication the vocational expert reviewed any medical records.

6

the vocational expert's testimony and his conclusion that a person with Mr. Gardener's RFC would be able to perform the jobs the vocational expert identified, albeit on slightly different grounds. Under those circumstances, the Court need not overlook even a patent error of this sort. Moreover, the arguments Ms. Gardener did make serve to reinforce the conclusion that the inaccurate hypothetical requires a remand.

In particular, Ms. Gardener argues that the Dictionary of Occupational Titles ("DOT") contradicts the vocational expert's testimony that a person with her limitations could perform the jobs the vocational expert identified. The social security regulations require ALJs "to ask whether a vocational expert's evidence 'conflicts with information provided in the DOT' before relying on that evidence to support a determination of nondisability." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p). Even if a vocational expert denies any conflicts, as she did here, an ALJ must still inquire into and obtain a reasonable explanation for any apparent conflicts between the vocational expert's testimony and the DOT. *Id.*; *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). Because Ms. Gardener's counsel did not raise this issue at the administrative hearing, she must show that any conflicts "were obvious enough that the ALJ should have picked up on them without any assistance." *Overman*, 546 F.3d at 464.

Ms. Gardener has likely met that burden as to two of the three jobs in question. One of those jobs is a conveyor tender. According to the DOT, a person performing that job "tends [a] conveyor or conveyor system that moves materials or products by belt." It further states that the person: "Moves levers or pushes buttons to start conveyor. Loads conveyor by hand, lift, or hoist, or by opening gates, chutes, or hoppers. Observes movement of materials or products on conveyor and dislodges jams, using pole, bar, handtools, or by hand." These activities involve interacting with and operating moving machinery, and appear to conflict with the limitation that

7

Ms. Gardener "cannot operate hazardous moving machinery." (R. 18). Another job the ALJ found Ms. Gardener could perform is a prep cook. The DOT describes that this job requires working in a kitchen, including working at and around stoves. However, the ALJ found that Ms. Gardener should have "no concentrated exposure to temperature extremes," (R. 18), which appears inconsistent with her ability to work in a kitchen. The Commissioner does not attempt to reconcile or defend these seeming contradictions, but argues that Ms. Gardener should have raised them at the hearing, and that an ALJ is entitled to rely on a "vocational expert's testimony in response to a hypothetical question that accurately describes the claimant in all significant respects." [DE 19 p. 13]. But as discussed above, the hypothetical here did not accurately describe each of Ms. Gardener's limitations, and as also just noted, an ALJ has an affirmative obligation to address any apparent conflicts even if neither the vocational expert nor the claimant raises them. *Overman*, 546 F.3d at 463.

The third job the ALJ found Ms. Gardener could perform was a dining room attendant, also known as a bus person. Ms. Gardener's argument as to a conflict with the DOT gets less traction as to this job, as she contends that a dining room attendant would often come into contact with people wearing strong perfume or cologne, which would violate the limitation that she have no concentrated exposure to fumes, odors, or pulmonary irritants. The Court doubts that incidental encounters with perfume or cologne constitute the sort of "concentrated exposure" to fumes, odors, or pulmonary irritants that the ALJ was referring to, and any contradiction on this point is not so apparent that the ALJ had a duty to independently raise it. However, the incomplete hypothetical discussed earlier could affect the suitability of this job for Ms. Gardener. A dining room attendant has to perform a variety of physical tasks, as described in the DOT, and it is possible that such a job would require more than occasional balancing, stooping, kneeling,

crouching, or crawling. The vocational expert testified that a person who could perform those movements "frequently" could do this job, but gave no opinion as to whether a person who can perform those movements only "occasionally"—like Ms. Gardener—could still do so. Thus, without a vocational expert's testimony on that point or an explanation from the ALJ, the Court cannot find that the Commissioner has satisfied her burden of showing that a person with Ms. Gardener's limitations would be able to perform that job. Accordingly, a remand is required.

Having found that remand is required on that basis, the Court will only briefly address Ms. Gardener's remaining arguments. Ms. Gardener first argues that the ALJ erred by failing to account for or acknowledge an agency physician's opinion as to her functional limitations. She points to language in a report stating, "She can walk a few feet. She can lift one pound and has severe pain." (R. 430). However, the Court agrees with the Commissioner that, when read in context, this language is reasonably understood as referring to Ms. Gardener's self-reported limitations (which the ALJ found to be incredible), not the physician's own opinion as to her limitations. Thus, the ALJ did not err in stating that this physician did not give a medical opinion as to Ms. Gardener's functioning. Ms. Gardener's last arguments are that the ALJ should have included additional limitations to reflect reports of chronic fatigue and drowsiness. The ALJ addressed these conditions by adding a limitation against operating hazardous moving machinery, but Ms. Gardener now argues the ALJ should have also included limitations as to her ability to focus, concentrate, sustain fast-paced work, and make quotas. Because this matter is being remanded for the reasons discussed above, the Court need not determine whether the ALJ committed any error in this respect. The Court would simply note that, since Ms. Gardener has now raised the issue, it would be helpful for the ALJ to discuss on remand why these limitations are not warranted, should the ALJ adopt the same RFC on remand.

## IV.  CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED:  May 12, 2017

                                              /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court